IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Case No.  23-10115-04-JWB

TAYLOR M. MULLEN,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to vacate his sentence under 28 U.S.C. § 2255.  (Doc. 147.)  The motion is briefed and ripe for decision.  (Docs. 147, 160.) Defendant did not file a reply brief and the time for doing so has passed.  Defendant's motion is DENIED for the reasons stated herein.

## I.    Facts

On September 26, 2024, Defendant pled guilty to one count of conspiracy to commit sexual exploitation of a child – production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). (Docs. 72; 74 at 1.)  The following facts were admitted as part of the plea agreement:

> Taylor Mullen (Mullen) and Jessica Quave made at least three videos involving Minor Victim 2 in Council Grove, Kansas. One of these video files is approximately 15 seconds long and shows Quave with Minor Victim 2. Quave can be heard saying "I'm showing daddy. Close your eyes, okay?" Quave then subjects the prepubescent child to oral sex by licking and penetrating the child's genitals with her tongue. Video 2, "Snapchat- 128518 7441.mp4", is approximately 15 seconds long and is also Quave subjecting Minor Victim 2 to oral sex by licking and penetrating the child's genitals with her tongue. The song Baby Shark can be heard playing in the background. Video 3 ending in "196f51A2.mp4" is approximately 11 seconds long. Quave subjects the Minor Victim 2 to open mouth kissing. Quave licks Minor Victim 2's face.
>
> These videos were produced on or about April 13, 2021, in the District of Kansas. Quave used her phone to produce the videos.

1

> Mullen admits to receiving these videos via the internet from Jessica Quave.
>
> During the time of the abuse, Minor Victim 2 was in the care and custody of Mullen. Mullen and Quave were dating during the time of the sexual abuse of Minor Victim 2. Mullen recorded Quave engage in sex acts upon Minor Victim 2 on several occasions. Mullen recorded Quave subjecting Minor Victim 2 to oral sex. Mullen also sexually abused Minor Victim 2 and Quave would record that abuse with her phone, an instrumentality of commerce. Specifically, Mullen admits to rubbing the vaginal area of MV2 with his hand, to sticking his penis next to the MV2's mouth and touching his penis to MV2's mouth, and to having MV2 place MV2's hand around Mullen's penis.
>
> Mullen knew that Quave was sexually abusing and recording Minor Victim 2, even when Mullen was not present. Mullen was aware of the abuse and still left Minor Victim 2 with Quave when he was not participating in the abuse himself.

(Doc. 74 at 2.)  On April 3, 2025, this court sentenced Defendant to 30 years in federal prison. (Docs. 125, 126.)  Defendant did not file a direct appeal.  (Doc. 147 at 2.)

On March 26, 2026, Defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  (*Id.* at 1.)  In his short motion, Defendant argues that there are multiple reasons to vacate his sentence.  All of Defendant's grounds for relief are premised upon the allegedly ineffective assistance of his counsel.  (*Id.* at 4.)  First, he alleges generally that his attorney "didn't fight for me hard enough."  (*Id.*)  Second, he claims that his attorney "didn't ask me if I think we should counterplea, and when I brought it up after already accepting the plea he said that he tried to counterplea without talking to me first, and that I should just accept the plea and be happy I'm even getting one."  (*Id.*)  Third, Defendant's attorney apparently "waited until after I accepted the plea to have a psychosexual evaluation done, and when I did finally have it done he had it reworded to fit the plea because the way the therapist wrote it contradicted the plea."  (*Id.*)  As explained below, the court rejects all of these grounds for relief and declines to set a hearing.

## II.    Standard

2

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b), Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 582 U.S. 357, 363 (2017) (citation omitted). "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.    Analysis

While Defendant's arguments are largely cumulative, the government distills Defendant's motion to three separate possible grounds for relief. (Doc. 160 at 4–5.) The court agrees with the government in this respect and divides its analysis accordingly. As explained below, all three grounds fail to provide a basis for relief.

### A.    Ground I

Defendant first argues that his attorney did not fight hard enough for him. (Doc. 147 at 4.) He provides little context or surrounding factual detail. (*See generally id.*) To the extent his first ground is distinct from the other two, Defendant says only "I hardly saw him, and when I did he didn't hardly remember where we left off at. He didn't argue my testimony." (*Id.*) The government argues that these general allegations do not demonstrate that his counsel's performance was deficient. (Doc. 160 at 9.) Moreover, the government contends that looking at the record in the case, counsel's actions are not deficient. (*Id.* at 9–12.) The court agrees on both fronts.

First, Defendant's exceedingly general allegations are conclusory and lack the factual matter required for relief. This alone is fatal to ground I. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("We are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."); *see also United States v. Rollow*, 357 F. App'x 966, 968 (10th Cir. 2009); *United States v. McDonald*, No. 11-CR-10158-EFM, 2013 WL 3867802, at *3, n. 10 (D. Kan. Jul. 25, 2023). The court will not *sua sponte* surmise that counsel's performance was deficient based only on Defendant's subjective expectations as to how often he should have met with his attorney. This is especially true when the Defendant has failed to provide specific facts.

4

The same goes for Defendant's bald claim that his attorney "hardly" remembered where they had "left off" and that counsel did not "argue [his] testimony." (Doc. 147 at 4.) As the government points out, it is entirely unclear what testimony Defendant is referring to, especially since Defendant pled guilty (Doc. 73), and was given the opportunity to speak for himself at sentencing. (Doc. 149 at 24.) He declined that opportunity, stating "I have nothing to say that my attorney hasn't said already." (*Id.*) The government points to several places where Defendant's counsel sought relief for him in both pre-plea and post-plea proceedings. (Doc. 160 at 10) (citing Doc. 158). As a consequence, the court finds that counsel's performance was not deficient.

And, as the government also argues, Defendant has not met his burden to show that he was in any way prejudiced by the general errors he alleges. (Doc. 160 at 11.) *Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Defendant has not even told the court what prejudice he suffered, much less argued that he suffered it because of counsel's errors. (*See* Doc. 147 at 4.)

Additionally, because Defendant pled guilty, (Doc. 148 at 33), he admitted under oath to the factual basis contained in the plea agreement, and the factual recitation given by the prosecutor at his change of plea hearing. (*Id.* at 31–32.) There is no basis upon which Defendant can claim that he was prejudiced by his counsel not "arguing [Defendant's] testimony." (Doc. 147 at 4.) Defendant admitted, in open court, under oath, multiple times, that he committed the offense for which he is incarcerated. There is no testimony to argue.

For these reasons, Defendant's ground I cannot support a motion to vacate.

**B.    Ground II**

5

Defendant's second ground is premised on the allegation that his counsel did not "ask me if I think we should counterplea, and when I brought it up after already accepting the plea he said that he tried to counterplea without talking to me first, and that I should just accept the plea and be happy I'm even getting one." (Doc. 147 at 4.) The government argues that this one sentence ground does not demonstrate either counsel's ineffectiveness or prejudice to Defendant. (Doc. 160 at 12–14.)

The court first agrees that Defendant again does not connect the alleged deficiency to any prejudice suffered and for this reason alone, ground II fails. Defendant must "show there is a reasonable probability that but for [his counsel's] deficient performance, he would likely have received a lower sentence." *United States v. Washington*, 619 F.3d 1252, 1262 (10th Cir. 2010). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome'" of the proceeding. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 694). "Mere speculation" will not do. *Id.* (citing *United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995)). Defendant has provided no argument as to how his counsel's error affected his decision to plead or his eventual sentence. (*See* Doc. 147 at 4.)

But moreover, defense counsel has provided an affidavit detailing his efforts to secure a favorable plea for Defendant. (Doc. 158.) In the absence of a contradiction or more specific facts, the court will credit counsel's attestations. *United States v. Hill*, 336 F. App'x 832, 834 (10th Cir. 2009) ("The [Rules Governing Section 2255 Proceedings] provide[] that '[t]he judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.'"); *see also Casey v. United States*, 940 F.2d 671 (Table), at *2 (10th Cir. 1991). In that affidavit counsel explains that Defendant told him to obtain a favorable plea agreement. (Doc. 158 at 2.) Counsel spoke to the government about a plea agreement resolution "many times." (*Id.*)

6

Counsel "went over" the plea agreement with Defendant. (*Id.* at 3.) Defendant understood it. (*Id.*) He "agreed it was in his best interest." (*Id.*) "Defendant made the decision to accept the plea agreement." (*Id.*) Counsel "attempted at all times to obtain the best possible outcome for the Defendant. I attempted to get the Defendant the best possible plea agreement. I spoke numerous times to the Government regarding possible resolutions to the case." (*Id.* at 3.) Additionally, counsel states that "[a]lmost every time I met with [Defendant], we discussed possible plea agreements and potential resolutions." (*Id.* at 5.) Counsel "tried to get an agreement that had a potential maximum sentence of less than 30 years. However, [he] could not obtain a better agreement." (*Id.* at 6.) This sequence of events, especially in the absence of more detailed allegations from Defendant, indicates that counsel's performance did not fall below an objective standard of reasonableness. Accordingly, Defendant's ground II cannot support a motion to vacate.

### C.    Ground III

Finally, on ground III Defendant argues his attorney "waited until after I accepted the plea to have a psychosexual evaluation done, and when I did finally have it done he had it reworded to fit the plea because the way the therapist wrote it contradicted the plea." (Doc. 147 at 4.) The government argues that these actions, were part of "reasonable professional judgment." (Doc. 160 at 15.)

Counsel has attested that his reason for waiting until after the plea to obtain the psychosexual evaluation was because it was being obtained solely for sentencing purposes. (Doc. 158 at 6.) It was intended to support a "motion for departure/variance." (*Id.*) The court, like the government, views this as eminently reasonable.

With respect to the alleged "rewording" of the evaluation to fit the plea, counsel essentially admits that this happened. (*Id.* at 6–7.) But importantly, counsel clarifies that the factual summary from the evaluation, that Defendant provided, was actually deleted, as it would have contradicted, and thus violated, the plea agreement. (*Id.*) In this way then, Defendant actually benefitted from counsel's actions. (*Id.*) Accordingly, Defendant cannot show prejudice, when the alternative to counsel's actions would have resulted in a violation of his plea agreement and jeopardized a possible offense level reduction under the sentencing guidelines. (*Id.* at 7.) Counsel reportedly consulted with both the evaluating doctor and Defendant about the removal of the factual summary, and both consented. (*Id.* at 7.) Additionally, there is nothing in Defendant's short allegations nor counsel's affidavit that persuades the court that counsel's actions fell below an objective standard of reasonableness. For these reasons, Defendant's ground III fails to provide a basis for vacatur.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for to vacate his sentence is DENIED. (Doc. 147.) An appeal from a final order on a § 2255 motion may not be taken absent a certificate of appealability, which may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The court concludes Defendant has failed to make such a showing and accordingly a certificate of appealability is DENIED.

IT IS SO ORDERED. Dated this 29th day of July, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

8